FILED

2019 APR 17 AM 11: 48

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

UNITED STATES DSTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SHAYLA ISLER,

      Plaintiff,

                                        CASE NO.

v.

                                        2:19-cv-246-FtM-38UAM

CARMINE MARCENO, in his official capacity as
Sheriff of Lee County, Florida,
ROSISLEYDIS PEROVANI, in her official capacity
and individually, and NICHOLAS GARBER, in his official capacity
and individually,

      Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

    COMES NOW the Plaintiff, Shayla Isler, by and through her attorneys, states and avers

as follows against the above-named Defendants:

### JURISDICTION, VENUE, AND CONDITIONS PRECEDENT

1.    This is a civil rights action in which the Plaintiff seeks relief for the violations of her

      rights secured by 42 U.S.C. § 1983, the First, Fourth, and Fourteenth Amendments,

      the general laws of the United States and the laws of the State of Florida.

2.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

3.    The events that give rise to this lawsuit took place at 12520 Equestrian Circle, Fort

      Myers, FL 33907.

4.    Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(b) and

      (e).

5.    Pursuant to § 768.28(6)(a), Florida Statutes, Plaintiff has notified the Lee County

Sheriff's Office of her claims prior to the filing of this action and said claims were not

resolved as the Lee County Sheriff's Office did not respond to said notice.

6.    Plaintiff has also complied with § 768.28(6)(a) by providing notice and service to the

Florida Department of Financial Services.

All conditions precedent to the filing of this action have occurred, accrued, or have been waived

as a matter of law.

## PARTIES

7.    Plaintiff, Shayla Isler (hereinafter "Plaintiff" or "Ms. Isler"), was at all times relevant

hereto, a citizen of Florida domiciled in Lee County, Florida and was over the age of

eighteen.

8.    Defendant, Carmine Marceno (hereinafter "Sheriff"), in his official capacity, is the

Sheriff of Lee County, Florida, and as such, is a constitutional officer of the State of

Florida, whose position is organized and exists under and by virtue of the laws of the

State of Florida, and as such is responsible for hiring, supervising, and managing all

employees of the Lee County Sheriff's Office.[1]

9.    At all times relevant, Defendant, ROSISLEYDIS PEROVANI (hereinafter "Deputy

Perovani"), was a deputy sheriff employed by the Lee County Sheriff's Office, acting

within the course and scope of her employment with the Lee County Sheriff's Office,

and under the color of law, is sued in her official and individual capacity.

---

[1] At all times relevant to the claims herein, Sheriff Mike Scott was the Sheriff of Lee County, FL.  Sheriff Scott retired, effective September 24, 2018, and Carmine Marceno was subsequently appointed Sheriff of Lee County, FL by then Governor Rick Scott.  Pursuant to Federal Rule of Civil Procedure Rule 25(d), it is appropriate to substitute Sheriff Carmine Marceno for Sheriff Mike Scott as a party to this action.

10.   At all times relevant, Defendant, NICHOLAS GARBER (hereinafter "Deputy

Garber"), was a deputy sheriff employed by the Lee County Sheriff's Office, acting

within the course and scope of his employment with the Lee County Sheriff's Office,

and under the color of law, is sued in his official and individual capacity.

### GENERAL ALLEGATIONS

11.   On April 20, 2015, Ms. Isler became locked out of her residence located at 12520

Equestrian Circle, Fort Myers, FL 33907.

12.   Ms. Isler called a locksmith to come to her home and was quoted a price for their

services.

13.   A locksmith, Miguel Ochoa, arrived at Ms. Isler's residence to render his services.

14.   Upon completion of his work, Mr. Ochoa attempted to charge Ms. Isler more than she

was quoted over the phone for the locksmith's services.

15.   After a brief discussion with Mr. Ochoa, Ms. Isler informed Mr. Ochoa that she was

refusing to pay the inflated price and would only pay the price that she was quoted

during the initial call.

16.   Mr. Ochoa did not agree to this, so Ms. Isler retreated to her residence.

17.   Mr. Ochoa subsequently called the Lee County Sheriff's Office ("LCSO") to

intervene.

18.   Deputy Perovani was dispatched to Ms. Isler's residence and was the first deputy to

arrive.

19.   Deputy Perovani first spoke with Mr. Ochoa, where Mr. Ochoa informed Deputy

Perovani that there was a dispute over locksmith charges for services rendered at Ms.

Isler's residence.

3

20.   Deputy Perovani then spoke with Ms. Isler, and Deputy Perovani was able to confirm that the dispute between Ms. Isler and Mr. Ochoa was in regard to locksmith services provided by Mr. Ochoa at Ms. Isler's residence.

21.   Deputy Perovani then ordered Ms. Isler to come out of her residence, which, reluctantly, Ms. Isler acquiesced to Deputy Perovani's authority and came out of her residence.

22.   Deputy Perovani then threatened Ms. Isler that if she did not pay Mr. Ochoa the inflated rate that he was demanding, she would be arrested.

23.   Ms. Isler continued to attempt to explain to Deputy Perovani that she was willing to pay the quoted amount for Mr. Ochoa's services, but that she would not pay the inflated rate Mr. Ochoa was attempting to charge.

24.   While this was all occurring, Deputy Garber arrived as a backup officer.

25.   Deputy Perovani informed Ms. Isler that she was being placed under arrest, and Ms. Isler continued to attempt to explain to both Deptuy Perovani and Deputy Garber that she was willing to pay the quoted amount for Mr. Ochoa's services, but that she would not pay the inflated rate Mr. Ochoa was attempting to charge.

26.   Deputy Garber then tased Ms. Isler, which resulted in her falling to the ground.

27.   Once on the ground, Deputy Perovani again tased Ms. Isler prior to her being aggressively being placed in handcuffs.

28.   Ms. Isler was placed under arrest for a violation of Florida Statute Section 509.151, Obtaining food or lodging with intent to defraud, and Florida Statutes Section 843.02, Resisting officer without violence to his or her person, and she was subsequently searched and transported to the Lee County Jail.

29. No probable cause or reasonable suspicion existed to arrest, detain, tase, and search Ms. Isler.

## COUNT I: 42 U.S.C. §1983 FALSE ARREST AND DETENTION
### (Against Deputy Perovani)

30. Ms. Isler re-alleges and re-avers the allegations contained in paragraphs 1 through 29 above as if fully set forth herein.

31. At all times, relevant herein, Defendant, Deputy Perovani, acted within the scope of her employment with LCSO.

32. Ms. Isler has a clearly established constitutional right to be free of any unreasonable seizures and a right to be free from the unlawful abuse of power by agents of the State.

33. Title 42 U.S.C. §1983 states, inter alia: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

34. As described more fully above, On April 20, 2015, Deputy Perovani, acting under the color of state law, intentionally caused Ms. Isler to be unlawfully detained and deprived of her liberty and freedom of movement against her will.

35. The ongoing detention was intentional, unreasonable, without Ms. Isler's consent, against Ms. Isler's will, and was done to intimidate Ms. Isler with a show of force and to be vindictive.

5

36.   Deputy Perovani's actions violated Ms. Isler's rights recognized by the Constitution and in 42 U.S.C. §1983.

37.   The continued detention of Ms. Isler was intentional and not warranted by the factual circumstances as they were known at the time of the unlawful arrest.

38.   There was no probable cause to arrest Ms. Isler, as demonstrated by Deputy Perovani's knowledge that she was at Ms. Isler's residence.

39.   As a direct and proximate cause of the actions of Deputy Perovani, Ms. Isler was injured and suffered damages that include bodily harm, physical discomfort and pain, physical suffering, medical expenses, mental suffering, embarrassment, humiliation, disgrace and injury, the physical and emotional aspects of which are continuing to this day and are likely to continue into the future.

WHEREFORE, Ms. Isler judgment against Deputy Perovani for compensatory damages and exemplary damages, together with interest, court costs, reasonable attorney's fees pursuant to 42 U.S.C. §1988, and such further relief as the Court deems proper.

### COUNT II: 42 U.S.C. §1983 FALSE ARREST AND DETENTION
### (Against Deputy Garber)

40.   Ms. Isler re-alleges and re-avers the allegations contained in paragraphs 1 through 29 above as if fully set forth herein.

41.   At all times, relevant herein, Defendant, Deputy Garber, acted within the scope of his employment with LCSO.

42.   Ms. Isler has a clearly established constitutional right to be free of any unreasonable seizures and a right to be free from the unlawful abuse of power by agents of the State.

43. Title 42 U.S.C. §1983 states, inter alia: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

44. As described more fully above, On April 20, 2015, Deputy Garber, acting under the color of state law, intentionally caused Ms. Isler to be unlawfully detained and deprived of her liberty and freedom of movement against her will.

45. The ongoing detention was intentional, unreasonable, without Ms. Isler's consent, against Ms. Isler's will, and was done to intimidate Ms. Isler with a show of force and to be vindictive.

46. Deputy Garber's actions violated Ms. Isler's rights recognized by the Constitution and in 42 U.S.C. §1983.

47. The continued detention of Ms. Isler was intentional and not warranted by the factual circumstances as they were known at the time of the unlawful arrest.

48. There was no probable cause to arrest Ms. Isler, as demonstrated by Deputy Garber's knowledge that he was at Ms. Isler's residence.

49. As a direct and proximate cause of the actions of Deputy Garber, Ms. Isler was injured and suffered damages that include bodily harm, physical discomfort and pain, physical suffering, medical expenses, mental suffering, embarrassment, humiliation,

7

disgrace and injury, the physical and emotional aspects of which are continuing to this day and are likely to continue into the future.

WHEREFORE, Ms. Isler judgment against Deputy Garber for compensatory damages and exemplary damages, together with interest, court costs, reasonable attorney's fees pursuant to 42 U.S.C. §1988, and such further relief as the Court deems proper.

## COUNT III: 42 U.S.C. §1983 EXCESSIVE FORCE
### (Against Deputy Perovani)

50.    Ms. Isler re-alleges and re-avers the allegations contained in paragraphs 1 through 29 above as if fully set forth herein.

51.    Without probable cause or reasonable suspicion that Ms. Isler had committed a crime, Deputy Perovani and Deputy Garber unlawfully authorized Ms. Isler's arrest.

52.    Ms. Isler has the right under both the Fourth and Fourteenth Amendment to be free from having excessive force used against her person.  The force used by Deputy Perovani and Deputy Garber during the seizure was excessive under the circumstances presented and therefore completely unreasonable.

53.    The circumstances did not indicate that a crime had been committed, nor was either Ms. Isler displaying any kind of provocation, threats, or alarm.  Still, Deputy Perovani and Deputy Garber tased Ms. Isler, forcefully threw their bodyweight on top of Ms. Isler while she was on the ground, aggressively cuffed her hands behind her back, and subjected Ms. Isler to a pat down of her body.

54.    The use of any force against a person who neither committed nor is suspected of committing a crime is excessive and constitutes a violation of 42 U.S.C. §1983.

55.    As a direct and proximate result of the constitutional violations and acts described above, Ms. Isler was injured and suffered damages that include bodily harm, physical

8

discomfort and pain, physical suffering, medical expenses, mental suffering,

embarrassment, humiliation, disgrace and injury, the physical and emotional aspects

of which are continuing to this day and are likely to continue into the future.

WHEREFORE, Ms. Isler requests judgment against Deputy Perovani for compensatory

damages and exemplary damages, together with interest, court costs, reasonable attorney's fees

pursuant to 42 U.S.C. §1988, and such further relief as the Court deems proper.

## COUNT IV: 42 U.S.C. §1983 EXCESSIVE FORCE
### (Against Deputy Garber)

56. Ms. Isler re-alleges and re-avers the allegations contained in paragraphs 1 through 29
above as if fully set forth herein.

57. Without probable cause or reasonable suspicion that Ms. Isler had committed a crime,
Deputy Perovani and Deputy Garber unlawfully authorized Ms. Isler's arrest.

58. Ms. Isler has the right under both the Fourth and Fourteenth Amendment to be free
from having excessive force used against her person. The force used by Deputy
Perovani and Deputy Garber during the seizure was excessive under the
circumstances presented and therefore completely unreasonable.

59. The circumstances did not indicate that a crime had been committed, nor was either
Ms. Isler displaying any kind of provocation, threats, or alarm. Still, Deputy Perovani
and Deputy Garber tased Ms. Isler, forcefully threw their bodyweight on top of Ms.
Isler while she was on the ground, aggressively cuffed her hands behind her back, and
subjected Ms. Isler to a pat down of her body.

60. The use of any force against a person who neither committed nor is suspected of
committing a crime is excessive and constitutes a violation of 42 U.S.C. §1983.

9

61.     As a direct and proximate result of the constitutional violations and acts described
        above, Ms. Isler was injured and suffered damages that include bodily harm, physical
        discomfort and pain, physical suffering, medical expenses, mental suffering,
        embarrassment, humiliation, disgrace and injury, the physical and emotional aspects
        of which are continuing to this day and are likely to continue into the future.

        WHEREFORE, Ms. Isler requests judgment against Deputy Garber for compensatory
damages and exemplary damages, together with interest, court costs, reasonable attorney's fees
pursuant to 42 U.S.C. §1988, and such further relief as the Court deems proper.

## COUNT V: 42 U.S.C. §1983 EXCESSIVE FORCE
### (Against Sheriff)

62.     Ms. Isler re-alleges and re-avers the allegations contained in paragraphs 1 through 29
        above as if fully set forth herein.

63.     Without probable cause or reasonable suspicion that Ms. Isler had committed a crime,
        Deputy Perovani and Deputy Garber unlawfully authorized Ms. Isler's arrest.

64.     Ms. Isler has the right under both the Fourth and Fourteenth Amendment to be free
        from having excessive force used against her person.  The force used by Deputy
        Perovani and Deputy Garber during the seizure was excessive under the
        circumstances presented and therefore completely unreasonable.

65.     The circumstances did not indicate that a crime had been committed, nor was either
        Ms. Isler displaying any kind of provocation, threats, or alarm.  Still, Deputy Perovani
        and Deputy Garber tased Ms. Isler, forcefully threw their bodyweight on top of Ms.
        Isler while she was on the ground, aggressively cuffed her hands behind her back, and
        subjected Ms. Isler to a pat down of her body.

66.     Sheriff Marceno, acting in his official capacity as Sheriff of the Lee County Sheriff's

        Office, was aware of various lawsuits complaining that his deputies used excessive

        force on other arrestees in circumstances not warranting the use of such force.  These

        lawsuits demonstrate a pattern and practice of LCSO impermissibly training its

        officers to make arrests in circumstances where it is objectively apparent that no law

        has been broken, as well as, the inadequacy of training to refrain from using excessive

        force.

67.     The use of any force against a person who neither committed nor is suspected of

        committing a crime is excessive and constitutes a violation of 42 U.S.C. §1983.

68.     The de facto policies, customs, and practices of Sheriff Marceno, acting in his official

        capacity as Sheriff of the Lee County Sheriff's Office, were the moving force behind

        the excessive force and deprivation of constitutional rights suffered by Ms. Isler and

        has not been remedied.

69.     Deputy Perovani's and Deputy Garber's conduct occurred in the course and scope of

        their employment with LCSO.

70.     Supervising deputies and ensuring Ms. Isler's safety from deputies is a non-delegable

        duty of Sheriff Marceno.

71.     As a result, Sheriff Marceno is vicariously liable in his official capacity for the

        actions of Deputy Perovani and Deputy Garber.

72.     As a direct and proximate result of the constitutional violations and acts described

        above, Ms. Isler was injured and suffered damages that include bodily harm, physical

        discomfort and pain, physical suffering, medical expenses, mental suffering,

embarrassment, humiliation, disgrace and injury, the physical and emotional aspects

of which are continuing to this day and are likely to continue into the future.

WHEREFORE, Ms. Isler requests judgment against Sheriff Marceno, acting in his

official capacity as Sheriff of the Lee County Sheriff's Office, for compensatory damages and

exemplary damages, together with interest, court costs, reasonable attorney's fees pursuant to 42

U.S.C. §1988, and such further relief as the Court deems proper.

**COUNT VI: 42 U.S.C. §1983 MALICIOUS PROSECUTION**
**(Against Deputy Perovani)**

73.    Ms. Isler re-alleges and re-avers the allegations contained in paragraphs 1 through 29

above as if fully set forth herein.

74.    The United States Constitution and Florida Statutes requires law enforcement officers

to possess sufficient probable cause before charging a citizen with a criminal offense.

75.    Deputy Perovani and Deputy Garber intentionally, knowingly, and maliciously,

recklessly, unreasonably, and/or gross negligently arrested Ms. Isler and initiated

criminal proceedings against her when they incarcerated her and charged her with

multiple criminal offenses.

76.    Ms. Isler's arrest and the initiation of criminal charges against her was without

sufficient probable cause, legal justification, just cause, or any other legally valid

reason.

77.    Deputy Perovani's and Deputy Garber's initiation of criminal charges against Ms.

Isler was done with malice and bad faith where they had no knowledge of any fact or

circumstance which would lead a reasonable person to believe that Ms. Isler

committed any criminal offense.

78. The criminal charges against Ms. Isler were terminated in her favor when the State Attorney's Office for the 20th Judicial Circuit declined to file an information against Ms. Isler.

79. As a direct and proximate result of the constitutional violations and acts described above, Ms. Isler was injured and suffered damages that include bodily harm, physical discomfort and pain, physical suffering, medical expenses, mental suffering, embarrassment, humiliation, disgrace and injury, the physical and emotional aspects of which are continuing to this day and are likely to continue into the future.

WHEREFORE, Ms. Isler requests judgment against Deputy Perovani for compensatory damages and exemplary damages, together with interest, court costs, reasonable attorney's fees pursuant to 42 U.S.C. §1988, and such further relief as the Court deems proper.

## COUNT VII: 42 U.S.C. §1983 MALICIOUS PROSECUTION
### (Against Deputy Garber)

80. Ms. Isler re-alleges and re-avers the allegations contained in paragraphs 1 through 29 above as if fully set forth herein.

81. Ms. Isler re-alleges and re-avers the allegations contained in paragraphs 1 through 29 above as if fully set forth herein.

82. The United States Constitution and Florida Statutes requires law enforcement officers to possess sufficient probable cause before charging a citizen with a criminal offense.

83. Deputy Perovani and Deputy Garber intentionally, knowingly, and maliciously, recklessly, unreasonably, and/or gross negligently arrested Ms. Isler and initiated criminal proceedings against her when they incarcerated her and charged her with multiple criminal offenses.

84.  Ms. Isler's arrest and the initiation of criminal charges against her was without sufficient probable cause, legal justification, just cause, or any other legally valid reason.

85.  Deputy Perovani's and Deputy Garber's initiation of criminal charges against Ms. Isler was done with malice and bad faith where they had no knowledge of any fact or circumstance which would lead a reasonable person to believe that Ms. Isler committed any criminal offense.

86.  The criminal charges against Ms. Isler were terminated in her favor when the State Attorney's Office for the 20th Judicial Circuit declined to file an information against Ms. Isler.

87.  As a direct and proximate result of the constitutional violations and acts described above, Ms. Isler was injured and suffered damages that include bodily harm, physical discomfort and pain, physical suffering, medical expenses, mental suffering, embarrassment, humiliation, disgrace and injury, the physical and emotional aspects of which are continuing to this day and are likely to continue into the future.

WHEREFORE, Ms. Isler requests judgment against Deputy Garber for compensatory damages and exemplary damages, together with interest, court costs, reasonable attorney's fees pursuant to 42 U.S.C. §1988, and such further relief as the Court deems proper.

## COUNT VIII: 42 U.S.C. §1983 MALICIOUS PROSECUTION
### (Against Sheriff)

88.  Ms. Isler re-alleges and re-avers the allegations contained in paragraphs 1 through 29 above as if fully set forth herein.

89.  The United States Constitution and Florida Statutes requires law enforcement officers to possess sufficient probable cause before charging a citizen with a criminal offense.

90. Deputy Perovani and Deputy Garber intentionally, knowingly, and maliciously, recklessly, unreasonably, and/or gross negligently arrested Ms. Isler and initiated criminal proceedings against her when they incarcerated her and charged her with multiple criminal offenses.

91. Ms. Isler's arrest and the initiation of criminal charges against her was without sufficient probable cause, legal justification, just cause, or any other legally valid reason.

92. Deputy Perovani's and Deputy Garber's initiation of criminal charges against Ms. Isler was done with malice and bad faith where they had no knowledge of any fact or circumstance which would lead a reasonable person to believe that Ms. Isler committed any criminal offense.

93. Sheriff Marceno, acting in his official capacity as Sheriff of the Lee County Sheriff's Office, was aware of various lawsuits complaining that his deputies falsely arrested other citizens. These lawsuits demonstrate a pattern and practice of LCSO impermissibly training its officers to make arrests in circumstances where it is objectively apparent that no law has been broken.

94. The criminal charges against Ms. Isler were terminated in her favor when the State Attorney's Office for the 20th Judicial Circuit declined to file an information against Ms. Isler.

95. The de facto policies, customs, and practices of Sheriff Marceno, acting in his official capacity as Sheriff of the Lee County Sheriff's Office, were the moving force behind the false arrest and deprivation of constitutional rights suffered by Ms. Isler and has not been remedied.

96.    Deputy Perovani's and Deputy Garber's conduct occurred in the course and scope of their employment with LCSO.

97.    Supervising deputies and ensuring Ms. Isler's safety from deputies is a non-delegable duty of Sheriff Marceno.

98.    As a result, Sheriff Marceno is vicariously liable in his official capacity for the actions of Deputy Perovani and Deputy Garber.

99.    As a direct and proximate result of the constitutional violations and acts described above, Ms. Isler was injured and suffered damages that include bodily harm, physical discomfort and pain, physical suffering, medical expenses, mental suffering, embarrassment, humiliation, disgrace and injury, the physical and emotional aspects of which are continuing to this day and are likely to continue into the future.

WHEREFORE, Ms. Isler requests judgment against Sheriff Marceno, acting in his official capacity as Sheriff of the Lee County Sheriff's Office, for compensatory damages and exemplary damages, together with interest, court costs, reasonable attorney's fees pursuant to 42 U.S.C. §1988, and such further relief as the Court deems proper.

### COUNT IX: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against Deputy Perovani)

100.    Ms. Isler re-alleges and re-avers the allegations contained in paragraphs 1 through 29 above as if fully set forth herein.

101.    Deputy Perovani knew that the conduct described herein, leading to Ms. Isler's false arrest, use of excessive force, and unlawful detention, would result in physical and emotional distress to Ms. Isler.

102.    Deputy Perovani's conduct was extreme and outrageous, goes well beyond all bounds of decency, and is odious and utterly intolerable in a civilized community.

16

103. The extreme and outrageous conduct of Deputy Perovani caused damages that include bodily harm, physical discomfort and pain, physical suffering, medical expenses, mental suffering, embarrassment, humiliation, disgrace and injury, the physical and emotional aspects of which are continuing to this day and are likely to continue into the future.

104. The emotional distress suffered by Ms. Isler was severe.

WHEREFORE, Ms. Isler requests judgment against Deputy Perovani for compensatory damages and exemplary damages, together with interest, court costs, reasonable attorney's fees pursuant to 42 U.S.C. §1988, and such further relief as the Court deems proper.

## COUNT X: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against Deputy Garber)

105. Ms. Isler re-alleges and re-avers the allegations contained in paragraphs 1 through 29 above as if fully set forth herein.

106. Deputy Garber knew that the conduct described herein, leading to Ms. Isler's false arrest, use of excessive force, and unlawful detention, would result in physical and emotional distress to Ms. Isler.

107. Deputy Garber's conduct was extreme and outrageous, goes well beyond all bounds of decency, and is odious and utterly intolerable in a civilized community.

108. The extreme and outrageous conduct of Deputy Garber caused damages that include bodily harm, physical discomfort and pain, physical suffering, medical expenses, mental suffering, embarrassment, humiliation, disgrace and injury, the physical and emotional aspects of which are continuing to this day and are likely to continue into the future.

109. The emotional distress suffered by Ms. Isler was severe.

WHEREFORE, Ms. Isler requests judgment against Deputy Garber for compensatory damages and exemplary damages, together with interest, court costs, reasonable attorney's fees pursuant to 42 U.S.C. §1988, and such further relief as the Court deems proper.

## COUNT XI: 42 U.S.C. §1983 RETALIATION
## (Against Sheriff)

110.   Ms. Isler re-alleges and re-avers the allegations contained in paragraphs 1 through 29 above as if fully set forth herein.

111.   Deputy Perovani and Deputy Garber, while acting under the color of law, violated 42 U.S.C. §1983 by retaliating against Ms. Isler for exercising her First and Fourth Amendment rights.

112.   Ms. Isler refused to pay an inflated rate for services to Mr. Ochoa, at her residence, all of which is evidence of a contractual dispute as opposed to criminal conduct.  The deputies were aware of this information, and Ms. Isler had a First Amendment right to inform the deputies of this information and refuse to pay Mr. Ochoa, without the fear of retaliation.

113.   As discussed above in greater detail, Deputy Perovani and Deputy Garber retaliated against Ms. Isler for exercising her constitutionally protected rights by unlawfully detaining, falsely arresting, and utilizing excessive force against her.

114.   Sheriff Marceno, acting in his official capacity as Sheriff of the Lee County Sheriff's Office, implemented a policy, custom, or practice of allowing LCSO deputies to retaliate against citizens who question their authority and assert their constitutional rights.

115.   As a direct and proximate result of the constitutional violations and acts described above, Ms. Isler was injured and suffered damages that include bodily harm, physical

discomfort and pain, physical suffering, medical expenses, mental suffering,

embarrassment, humiliation, disgrace and injury, the physical and emotional aspects

of which are continuing to this day and are likely to continue into the future.

WHEREFORE, Ms. Isler requests judgment against Sheriff Marceno, acting in his

official capacity as Sheriff of the Lee County Sheriff's Office, for compensatory damages and

exemplary damages, together with interest, court costs, reasonable attorney's fees pursuant to 42

U.S.C. §1988, and such further relief as the Court deems proper.

### COUNT XII: 42 U.S.C. §1983 RETALIATION
### (Against Deputy Perovani)

116. Ms. Isler re-alleges and re-avers the allegations contained in paragraphs 1 through 29
above as if fully set forth herein.

117. Deputy Perovani, while acting under the color of law, violated 42 U.S.C. §1983 by
retaliating against Ms. Isler for exercising her First and Fourth Amendment rights.

118. Ms. Isler refused to pay an inflated rate for services to Mr. Ochoa, at her residence, all
of which is evidence of a contractual dispute as opposed to criminal conduct. The
deputies were aware of this information, and Ms. Isler had a First Amendment right to
inform the deputies of this information and refuse to pay Mr. Ochoa, without the fear
of retaliation.

119. As discussed above in greater detail, Deputy Perovani retaliated against Ms. Isler for
exercising her constitutionally protected rights by unlawfully detaining, falsely
arresting, and utilizing excessive force against her.

120. As a direct and proximate result of the constitutional violations and acts described
above, Ms. Isler was injured and suffered damages that include bodily harm, physical
discomfort and pain, physical suffering, medical expenses, mental suffering,

embarrassment, humiliation, disgrace and injury, the physical and emotional aspects

of which are continuing to this day and are likely to continue into the future.

WHEREFORE, Ms. Isler requests judgment against Deputy Perovani for compensatory

damages and exemplary damages, together with interest, court costs, reasonable attorney's fees

pursuant to 42 U.S.C. §1988, and such further relief as the Court deems proper.

## COUNT XIII: 42 U.S.C. §1983 RETALIATION
### (Against Deputy Garber)

121.  Ms. Isler re-alleges and re-avers the allegations contained in paragraphs 1 through 29
      above as if fully set forth herein.

122.  Deputy Garber, while acting under the color of law, violated 42 U.S.C. §1983 by
      retaliating against Ms. Isler for exercising her First and Fourth Amendment rights.

123.  Ms. Isler refused to pay an inflated rate for services to Mr. Ochoa, at her residence, all
      of which is evidence of a contractual dispute as opposed to criminal conduct.  The
      deputies were aware of this information, and Ms. Isler had a First Amendment right to
      inform the deputies of this information and refuse to pay Mr. Ochoa, without the fear
      of retaliation.

124.  As discussed above in greater detail, Deputy Garber retaliated against Ms. Isler for
      exercising her constitutionally protected rights by unlawfully detaining, falsely
      arresting, and utilizing excessive force against her.

125.  As a direct and proximate result of the constitutional violations and acts described
      above, Ms. Isler was injured and suffered damages that include bodily harm, physical
      discomfort and pain, physical suffering, medical expenses, mental suffering,
      embarrassment, humiliation, disgrace and injury, the physical and emotional aspects
      of which are continuing to this day and are likely to continue into the future.

WHEREFORE, Ms. Isler requests judgment against Deputy Garber for compensatory damages and exemplary damages, together with interest, court costs, reasonable attorney's fees pursuant to 42 U.S.C. §1988, and such further relief as the Court deems proper.

## COUNT XIV: 42 U.S.C. §1983 NEGLIGENT TRAINING AND SUPERVISION
### (Against Sheriff)

126. Ms. Isler re-alleges and re-avers the allegations contained in paragraphs 1 through 29 above as if fully set forth herein.

127. At all times relevant, Defendant, Sheriff Marceno, promulgated and maintained a de facto unconstitutional custom, policy, or practice or permitting, ignoring, and condoning and/or encouraging officers, deputies, and other employees and agents to unlawfully arrest citizens where no probable cause or reasonable suspicion exists that a citizen has committed a crime, to the extent that such practice has been ratified by Sheriff Marceno, despite its illegal and unconstitutional impact on citizens.

128. Ms. Isler is informed, believes, and thereon alleges that Sheriff Marceno, Deputy Perovani, and Deputy Garber knew or should have known of a history, custom, propensity, and pattern in which deputies, supervisors and other employees openly charged citizens with crimes where no probable cause or reasonable suspicion exists.

129. The arrest of Ms. Isler demonstrates that Deputy Perovani and Deputy Garber were not properly trained to distinguish between probable cause for an arrest and a mere civil dispute.

130. Sheriff Marceno, Deputy Perovani, and Deputy Garber owed Ms. Isler a duty to protect her from unreasonable searches and seizures, false arrests, excessive force, and wrongful imprisonment.

131. This duty was breached by failing to properly train, instruct, oversee, and/or manage all levels of the LCSO deputies to ensure that they adequately, reasonably, and responsibly performed their duties not to harm or abuse the public, including falsely arresting and utilizing excessive force against Ms. Isler.

132. Sheriff Marceno, acting in his official capacity as Sheriff of the Lee County Sheriff's Office, had complete control and authority over all deputies in the LCSO, including Deputy Perovani and Deputy Garber. The LCSO, acting through Sheriff Marceno, inadequately trained, supervised, and/or disciplined Deputy Perovani, Deputy Garber, and other LCSO deputies. Sheriff Marceno's deficiencies in training include, but are not limited to, failing to:

    a. Educate deputies in the standards of law enforcement;

    b. Ensure that LCSO deputies understand both the concepts of probable cause and reasonable suspicion, and the natural limits of those concepts; and

    c. Instruct LCSO deputies on how to avoid abusing the power reposed in them, including training them on the usage of force, how to differentiate between criminal conduct and a mere civil dispute, and training officers to not falsely report on official documents.

133. As described in more detail above, the failure of Sheriff Marceno, actin in his official capacity as Sheriff of the Lee County Sheriff's Office, to adequately train and supervise LCSO deputies resulted in Ms. Isler being the victim of a barrage of tortious conduct as the hand of LCSO deputies, including but not limited to, being subjected to false arrest, the use of excessive force, and wrongful imprisonment.

134. Despite knowledge of systematic training deficiencies, which led to LCSO's practices of making false arrests, using excessive force, and wrongfully imprisoning citizens, and despite being on notice of the need for further training and supervision in those areas, Sheriff Marceno continued to make a deliberate choice not to take any action.

135. As a direct and proximate result of the constitutional violations and acts described above, Ms. Isler was injured and suffered damages that include bodily harm, physical discomfort and pain, physical suffering, medical expenses, mental suffering, embarrassment, humiliation, disgrace and injury, the physical and emotional aspects of which are continuing to this day and are likely to continue into the future.

WHEREFORE, Ms. Isler requests judgment against Sheriff Marceno, acting in his official capacity as Sheriff of the Lee County Sheriff's Office, for compensatory damages and exemplary damages, together with interest, court costs, reasonable attorney's fees pursuant to 42 U.S.C. §1988, and such further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable herein.

Date:  April 17, 2019                              Respectfully submitted,

                                                    /s/Geraldo F. Olivo, III
                                                   Geraldo F. Olivo, III
                                                   Florida Bar No. 60905
                                                   Wilbur Smith Attorneys at Law
                                                   1415 Hendry Street
                                                   Fort Myers, FL 33901
                                                   Telephone: 239.334.7696
                                                   gfolivo@wilburlaw.com
                                                   aburns@wilburlaw.com
                                                   *Counsel for Plaintiff*

                                                    /s/Hal Adams
                                                   Hal Adams
                                                   Florida Bar No. 145564

Wilbur Smith Attorneys at Law
1415 Hendry Street
Fort Myers, FL 33901
Telephone: 239.334.7696
hadams@wilburlaw.com
aburns@wilburlaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 17, 2019, I electronically filed the foregoing with the Clerk of the Court by using Florida E-Filing Portal, which will provide service to attorneys of record.

/s/Geraldo F. Olivo, III
Geraldo F. Olivo, III
Florida Bar No. 60905